UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| INFINAQUEST, LLC,  )  <br>    Plaintiff,  )  <br>  )  <br> v.  )  <br>  )  <br> DIRECTBUY, INC. and  )  <br> BETA FINANCE COMPANY, INC.,  )  <br>    Defendants.  )  | Cause No. 2:12-CV-222-PRC |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 31], filed on October 22, 2013. It became fully briefed on December 12, 2013. Both sides in this case were owed money under contracts they had with a company in Florida called JDB Direct, LLC. This dispute arose after JDB defaulted on its debts and Defendants collected money that InfinaQuest claims rightfully belongs to it. InfinaQuest filed its Complaint on June 6, 2012, alleging tortious interference with contract and conversion.

Both parties orally consented on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 29 U.S.C. § 636(c).

**I. Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986) (citing Fed. R. Civ. P. 56 (c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110–11 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party

cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249–50.

## II. Material Facts

### A. The Contracts Between Defendants and JDB

Defendant DirectBuy, Inc. is the franchisor of a network of over 100 DirectBuy franchises throughout the United States and Canada. The franchises sell DirectBuy memberships to consumers

3

enabling those who join to shop for furniture, cabinetry, and the like at wholesale prices. The business model for setting up franchises is what one might expect: in exchange for fees and a cut of the franchisee's income, DirectBuy grants franchisees the right to run a DirectBuy club using DirectBuy's showroom design, trademarks, marketing, sales techniques, etc.

On May 29, 2008, JDB Direct, LLC, a Florida-based company, entered into a Franchise Agreement with DirectBuy, which made JDB a franchisee with the right to operate a DirectBuy club in Orlando, Florida. That agreement provided in relevant part that JDB would periodically pay DirectBuy a franchise fee, royalty fees (calculated every week based on new memberships), and fees for DirectBuy's lead generation and marketing programs. DirectBuy was in turn authorized to collect the receivables and to sweep JDB's merchandise account daily. After collecting funds paid to JDB, DirectBuy would conduct an internal accounting and return to JDB any amounts it was entitled to, subject to the application of contractual set off rights. Essentially, money that belonged to JDB was channeled through DirectBuy, which would take out anything it was owed by JDB before passing the money to JDB.

At the same time it agreed to the Franchise Agreement with DirectBuy, JDB entered into a Financing Agreement with Defendant Beta Financing Company, Inc. (Beta).[1] Under the Financing Agreement, JDB would assign the consumer financing contracts of new members to Beta. Beta in turn would collect the amounts due under the consumer financing contracts and remit to JDB the portion provided by their Financing Agreement. (There were apparently different ways this was structured based on the quality of the debt, but this is not important here.)

Both the Franchise Agreement between DirectBuy and JDB and the Financing Agreement

---

[1] Both Beta and DirectBuy are wholly owned subsidiaries of United Consumers Club, Inc.

between Beta and JDB included set-off provisions. The set-off provision in the Franchise Agreement stated that DirectBuy

> may apply any payments by you [JDB], or offset any amounts we or any of our Affiliates owe you, to or against any of your past due indebtedness for royalties, Marketing and Legislative Fund contributions or any other indebtedness to us or any of our Affiliates, notwithstanding any contrary designation by you.

Mot. for Summ. J., Exh. B-1 at 11. Likewise, the set-off provision in the Financing Agreement between Beta and JDB provided that

> Beta shall have the right, at its sole discretion, and Franchisee [JDB] hereby irrevocably and unconditionally authorizes Beta, on Franchisee's behalf, to hold and apply any payments due and owing to Franchisee with respect to any Contracts and any reserve funds to any indebtedness of Franchisee for any and all charges, fees or other amounts due and owing to Beta, DirectBuy or any of their respective affiliates of whatever nature, including, without limitation, all charges, fees and other amounts due under this agreement . . . and the Franchise Agreement [between DirectBuy and JDB]. Franchisee hereby irrevocably and unconditionally authorizes Beta, on Franchisee's behalf, to pay from amounts due to the Franchisee hereunder, all franchise fees, royalty fees and all other amounts payable in connection with the Franchise Agreement or in connection with any other agreement entered into with DirectBuy or any of its affiliates. The foregoing rights shall survive the termination of this Agreement.

Mot. for Summ. J., Exh. B-2 at 2.

### B. The Receivables Agreements

On March 25, 2010, InfinaQuest Business Capital, LLC (IBC), a wholly owned subsidiary of InfinaQuest, filed a financing statement with the Florida Secured Transaction Registry, perfecting security interests granted to IBC in a pair of receivables agreements IBC and JDB had entered into earlier that same month. The receivables agreements granted IBC a floating security interest in

5

essentially all of JDB's tangible and intangible property, collectively referred to in the financing statement as JDB's "receivables." JDB also entered into eighteen other receivables agreements, but these were with InfinaQuest, not IBC. InfinaQuest never filed a financing statement in its own name. At the time it entered into these agreements, JDB owed Directbuy $365,000 in general bills. That debt grew to over $1,000,000 by April 30, 2012.

JDB eventually defaulted on the receivables agreements with IBC and InfinaQuest and on its contracts with DirectBuy (resulting in the Franchise Agreement being terminated). Defendants managed to collect money from JDB. And though InfinaQuest recouped approximately $400,000 from JDB, it contends that it is still owed $602,217 (as well as interest, attorneys fees, and costs). JDB could not repay this, and InfinaQuest hence brought this lawsuit against Defendants.

## III. Analysis

InfinaQuest's central claim is that Defendants took money that rightfully belonged to InfinaQuest under its perfected security interest in JDB's receivables. Defendants argue that InfinaQuest does not have a perfected security interest, that—even if it did—it took that interest subject to Defendants' set-off rights, and that InfinaQuest's claims of conversion and tortious interference with contract fail as a matter of law. The Court begins its analysis with the issue of whether the security interest of InfinaQuest was taken subject to Defendants' contractual set-off rights.

Defendants contend that JDB could only assign an interest in what it actually possessed. And since it did not own its receivables outright, but rather owned them subject to the contractual set off by DirectBuy, Defendants argue that any interest granted in JDB's receivables was taken subject to the set-off provision. In other words, it was not possible for JDB to give away what it did not have.

The disagreement centers on the interpretation of a handful of sections of the Uniform Commercial Code (UCC), which have been codified without relevant changes in every jurisdiction relevant to this dispute. Under the UCC, security priority is usually determined by who filed first. *See* UCC § 9-322(a)(1). Defendants contend, however, that UCC § 9-404 applies to their set-off rights.[2] *See* UCC § 9-109(d)(10). Section 9-404(a) provides that

> [u]nless an account debtor [on Defendants' reading, DirectBuy] has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee [on Defendants' reading, InfinaQuest] are subject to:
>
> (1)   all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
>
> (2)   any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

UCC § 9-404(a). InfinaQuest contends that this section does not apply to this case, arguing that Defendants were not account debtors and that InfinaQuest was not an assignee. The Court considers each argument in turn.

*1. "Account Debtor"*

The first question is whether Defendants were account debtors. InfinaQuest points out that "an 'account debtor'" under the UCC "is basically someone who owes money as a result of a contractual undertaking." *In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 953 (7th Cir. 2003). InfinaQuest argues that, since Defendants did not owe JDB anything, UCC § 9-404 does not apply. But this is incorrect.

---

[2] DirectBuy's affiliates such as Beta, can, under the language of the Franchise Agreement, take advantage of that contract's set-off provisions and cash flow structure.

The relevant definition of "account debtor" is a "person obligated on an account." UCC § 9-102(a)(3). The Franchise Agreement provided that DirectBuy would collect receivables, perform a daily sweep of JDB's merchandise account, do an internal accounting, take out any funds owed to DirectBuy or its affiliates, and then pass the money to JDB. So long as JDB did not owe DirectBuy *more* than DirectBuy owed JDB, DirectBuy was JDB's consistent debtor under the Franchise Agreement. Defendants were hence obligated on the account to make payments subject to the set-off provision.

A pair of cases from the Sixth Circuit provide guidance on the issue as well. *In re U.S. Aeroteam, Inc.* involved a contract between U.S. Aeroteam, Inc. and Delphi Automotive Systems, LLC, which gave Delphi the right to deduct from its payments to Aeroteam any amounts owed to Delphi by Aeroteam—in other words, a set off. 327 B.R. 852, 870 (Bankr. S.D. Ohio 2005). Like this case, Aeroteam ended up owing Delphi more than Delphi owed Aeroteam. *Id.* That court explained that "Delphi is the account debtor attempting to exercise a right to set-off amounts owed to" Aeroteam. *Id.* at 870 n.16. Likewise, the Sixth Circuit Court of Appeals held that a party owed money under a similar set-off agreement was an account debtor. *Nat'l City Bank, Nw. v. Columbian Mut. Life Ins. Co.*, 282 F.3d 407, 410 (6th Cir. 2002).

This is consistent with the Seventh Circuit Court of Appeals' explanation that an account debtor under UCC § 9-404 "is *basically* someone who owes money as a result of a contractual undertaking." *Doctors Hosp. of Hyde Park*, 337 F.3d at 953 (emphasis added). The usual case of an account debtor under § 9-404 is indeed one in which where the account debtor owes money. This need not always be the case, however, so long as the party in question was—as here—obligated on an account.

8

UCC § 9-404 appears to contemplate situations in which "account debtors" are in fact net creditors. UCC § 9-404(b), which does not otherwise apply to this case, provides that the "claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes." UCC § 9-404 (b). This limitation would be superfluous if "account debtors" could never be net creditors. Defendants are "account debtors" under UCC § 9-404.

### 2. "Assignee"

InfinaQuest next contends that it is not an "assignee" under § 9-404. Generally, "the courts and the UCC have made no distinction between a party with a security interest in a debtor's accounts receivable and a party who is an assignee of a debtor's accounts receivable." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1190 (7th Cir. 1990) (citations omitted); *accord. In re Otha C. Jean & Assoc., Inc.*, 152 B.R. 219, 222–23 (Bankr. E.D. Tenn. 1993) ("[A] secured party with a security interest in accounts or general intangibles is the assignee under [§ 9-404(a)].");

InfinaQuest admits this but contends that this general rule is inapplicable here. It points out that § 9-404 applies only when someone takes either a security interest in or complete ownership of an existing account receivable. *See In re Printz*, 478 B.R. 876, 887 (Bankr. C.D. Ill. 2012) (citing *First Nat. Bank of Boston v. Thomson Consumer Elecs., Inc.*, 84 F.3d 397, 398–400 (11th Cir. 1996); *GMAC Comm. Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 407 (S.D.N.Y. 2001)). InfinaQuest argues that its interest arose under its receivables agreements, which were separate contracts with JDB executed *before* any particular account receivable came into existence. It thus contends that its security interest came into existence *before* any specific interest belonging to Defendants did.

It argues that the distinction is important because § 9-404(a) protects those with subsequently created contractual set-off rights *only* when they have not been given notice or have not given consent. *Id.* at 887. This rule makes sense because allowing a contractual set-off right created *after* a perfected security interest to take priority would allow an end-run around the contract granting the security interest. *Id.*

But this exception is inapplicable here because InfinaQuest did, in fact, take an interest in an existing account receivable. The recievables agreements between JDB and InfinaQuest specifically gave InfinaQuest a security interest in (among other things) "all of Debtor's now owned or hereafter acquired accounts." Def. Mot. for Summ. J., Exh. 3 at 3. One of the accounts JDB then owned was the merchandise account with which DirectBuy had the right to set off its debts after performing its daily sweep. InfinaQuest thus took its interest in the existing accounts subject to this pre-existing right of set off.

The *Aeroteam* case goes further than *Printz*, explaining that § 9-404(a) applies "when a contracting party provides a security interest in some or all of its contractual rights to a third party, referred to as the 'assignee,' without the knowledge or consent of the other contracting party." *Aeroteam*, 327 B.R. at 870–71 (citing *Nat'l City Bank*, 282 F.3d at 409). On this approach, notice would destroy contractual set offs in every case, regardless of order. The Court disagrees with this interpretation because it is directly contradicted by the plain text of the statute. Section 9-404(a) provides simply that assignees take their interest subject to "all terms" of the underlying contract. The official comment likewise explains that "if the account debtor's defenses on an assigned claim arise from the transaction that gave rise to the contract with the assignor, it makes no difference whether the defense or claim accrues before or after the account debtor is notified of the

10

assignment." UCC § 404 Official Comment 2.[3] The set-off provision is a term of the Franchise Agreement, and—as an assignee—InfinaQuest took its security interest subject to that provision.

This analysis is consistent with the common law maxim *nemo dat quot non habet* (no one can give what he does not have) since JDB's interest in its account was subject to DirectBuy's contractual set off. *See Nat'l City Bank, Nw.*, 282 F.3d at 409 (citing Restatement (Second) of Contracts § 336 (1981); *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 682 (2d Cir. 1989)). It is also consistent with UCC § 9-203(b)(2), which provides that "a security interest is enforceable against the debtor and third parties with respect to the collateral only if . . . the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party." UCC § 9-203(b)(2). Summary Judgment is hence warranted on this basis regardless of whether Defendants are correct in contending that InfinaQuest failed to perfect its security interest.

InfinaQuest's claims of conversion and tortious interference with contract fail as a matter of law. For a plaintiff to prevail on a claim of criminal conversion, it must prove that the defendant exercised unauthorized control over the property of another. *See* Ind. Code § 35-43-4-3(a). Here, the property—that is, the money—belonged to Defendants and they exercised control over it pursuant to the contractual set-off rights. Likewise, for a plaintiff to prevail on a claim of tortious interference with contract, it must prove, among other things, that the party alleged to have interfered lacked justification for what it did. *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 922 (Ind. Ct. App. 2002). Here, Defendants were justified in their actions because of the contractual set-off provision.

---

[3] Notice is important in UCC § 9-404, but not in this context. UCC § 9-404(a)(2) states that the rights of an assignee are subject to "any other defense or claim [i.e., any defense or claim not arising under the contract] of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee." UCC § 9-404 (a)(2). This is inapplicable here since what is at issue is what the contract provided for, not some other "defense or claim." *Id.*

## IV. Conclusion

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [DE 31]. Defendants state in their brief that a grant of summary judgment also nullifies their counterclaims. The Court thus **ORDERS** Defendants' Counterclaims **DISMISSED** and **DIRECTS** the Clerk of Court to enter judgment against InfinaQuest and in favor of Defendants.

SO ORDERED this 5th day of May, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record.